# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 25-2028

**JOHN DOE**,

*Plaintiff-Appellant*,

v.

**KASH PATEL**, in his official capacity as
Director of the Federal Bureau of Investigation,

*Defendant-Appellee*.

On appeal from the U.S. District Court for the Eastern District of Virginia,
Case No. 1:24-cv-2365
Hon. Michael S. Nachmanoff

BRIEF OF DEFENDANT-APPELLEE

TODD W. BLANCHE
Acting Attorney General

ELIZABETH A. SPAVINS
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3785
Fax:    (703) 299-3983
Email:   Lizzie.Spavins@usdoj.gov
*Counsel for Defendant-Appellee*

Date: April 9, 2026

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..........................................................................III

**STATEMENT OF JURISDICTION**.................................................................1

**STATEMENT OF THE ISSUES**......................................................................1

**STATEMENT OF THE CASE**.........................................................................1

   I.  Factual Background.......................................................................................1

   II. The Fair Credit Reporting Act ("FCRA").....................................................4

   III. Procedural History.........................................................................................6

**SUMMARY OF THE ARGUMENT**..............................................................11

**STANDARD OF REVIEW** ...........................................................................13

**ARGUMENT** .................................................................................................13

   I.  THE DISTRICT COURT DID NOT ERR IN HOLDING THE FBI IS NOT A CONSUMER REPORTING AGENCY UNDER THE FCRA. ......................13

      A. The FBI Does Not "Regularly Engage" "In the Practice of Assembling or Evaluating" Criminal History Information "For the Purpose of Furnishing Consumer Reports to Third Parties" .......................................................15

      B. Courts Have Repeatedly Rejected the Position that the FBI – or Other Law Enforcement Agencies – Are "Consumer Reporting Agencies" Under the FCRA................................................................................................... 25

**CONCLUSION**..............................................................................................**36**

**CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A)**....................................................................37

**CERTIFICATE OF SERVICE**...................................................................38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Andon, LLC v. City of Newport News, Va.*,
   813 F.3d 510 (4th Cir. 2016) ......................................................................13

*Arnold v. Capital One Servs., Inc.*,
   2011 WL 864332 (E.D. Va. March 10, 2011) ................................... 9, 26, 27, 35

*Dep't of Agric. Rural Development Rural Hous. Serv. v. Kirtz*,
   601 U.S. 42 (2024) .......................................................................... 7, 10, 11

*Foley v. IRBsearch, LLC*,
   2025 WL 950679 (S.D.N.Y. Mar. 28, 2025) ................................................ 21, 22

*Hall v. Virginia*,
   385 F.3d 421 (4th Cir. 2004) ......................................................................18

*Kidd v. Thomson Reuters Corp.*,
   925 F.3d 99 (2nd Cir. 2019) ................................................................ 29, 30, 31

*Montana v. Johnson*,
   738 F.2d 1074 (9th Cir. 1984) .....................................................................29

*Mowrer v. U.S. Dep't of Transp.*,
   14 F.4th 723 (D.C. Cir. 2021) .............................................................. 9, 27, 28, 33

*Mowrer v. U.S. Dep't of Transp.*,
   No. CV 12-1158 (BAH), 2019 WL 4418747 (D.D.C. Sept. 16, 2019) .......... 9, 27

*Ollestad v. Kelley*,
   573 F.2d 1109 (9th Cir. 1978) .............................................................. 9, 25, 26, 27

*Ricci v. Key Bancshares of Maine, Inc.*,
   768 F.2d 456 (1st Cir. 1985) ................................................................ 8, 26

*Smith v. Busch Entertainment Corp.*,
   2009 WL 1608858 (E.D. Va. June 3, 2009) ........................................ 9, 15, 26, 34

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ............................................................... *passim*

*Thomas v. FTS USA, LLC*,
   2016 WL 3653883 (E.D. Va. June 30, 2016)................................................. 9, 26

*Zabriskie v. Fed. Nat'l Mortg. Ass'n*,
   940 F.3d 1022 (9th Cir. 2019) ................................................ 29, 30, 32

Statutes

15 U.S.C. § 1681 ...............................................................................1
15 U.S.C. § 1681(a)(1).................................................................... 4, 13
15 U.S.C. § 1681(b) ...........................................................................4
15 U.S.C. §  1681a(d)(1)................................................................. 5, 14, 29
15 U.S.C. § 1681a(b) ..........................................................................5
15 U.S.C. § 1681a(f) .................................................................... *passim*
15 U.S.C. § 1681c .......................................................................... 6, 24
15 U.S.C. § 1681c(a)..........................................................................6
15 U.S.C. § 1681e(b) ...................................................................... 6, 24
15 U.S.C. § 1681n(a)..........................................................................6
28 U.S.C. § 534(a)(1) ..................................................................... 16, 23
28 U.S.C. § 1291 ...............................................................................1
28 U.S.C. § 1331 ...............................................................................1
34 U.S.C. § 40311-16 ..................................................................... 17, 23
34 U.S.C. § 41104................................................................................16
34 U.S.C. § 41104-07 ..................................................................... 17, 23

Rules

Federal Rule of Civil Procedure 12(b)(6) ........................................ 7, 18

Regulations

28 C.F.R. § 0.85(j) ......................................................................... 17, 23
28 C.F.R. § 16.30–34 ...................................................................... 17, 23
28 C.F.R. § 16.34 ..............................................................................24
28 C.F.R. § 20.3(b) ...................................................................... *passim*
28 C.F.R. § 20.3(d) ........................................................................ 18, 22
28 C.F.R. § 20.30–38 ...................................................................... 17, 23
28 C.F.R. § 20.31(a)....................................................................... 10, 34

28 C.F.R. § 20.31(b) ...................................................................................... 10, 15

28 C.F.R. § 20.32 .................................................................................................18

28 C.F.R. § 20.32(a).............................................................................................24

28 C.F.R. § 20.32(b) ............................................................................................24

28 C.F.R. § 20.33(a)(3) .......................................................................................16

28 C.F.R. § 20.37 ........................................................................................... 17, 24

28 C.F.R. § 50.12(b) ....................................................................................... 17, 23

Other Authorities

FIRS System of Records Notice,
  64 Fed. Reg. 52343 (Sept. 28, 1999)...................................................................16

NGI System of Record Notice,
  81 Fed. Reg. 27284 (May 5, 2016)......................................................................16

Other

Va. Code Ann. § 19.2-388 ....................................................................................34

116 Cong. Rec. 35941 (1970) (remarks of Sen. Proxmire) ...................................27

116 Cong. Rec. 36576 (1970) (remarks of Rep. Brown).......................................27

*Fed. Trade Comm'n, 40 Years of Experience with the Fair Credit Reporting Act*,
  2011 WL 3020575 (2011) ............................................................................ 31, 32

FBI, *Next Generation Identification (NGI)*, Law Enforcement Resources,
https://le.fbi.gov/science-and-lab/biometrics-and-fingerprints/biometrics/next-
generationidentification-ngi...................................................................................16

FBI, *Identity History Summary Checks (Rap Sheets)*, How We Can Help You,
https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-
information/identity-history-summary-checks ..................................................18, 22

FBI, *Identity History Summary Checks (Law Enforcement Requests)*, Law
Enforcement Resources,
https://le.fbi.gov/informational-tools/identity-history-summary-checks...........18, 22

FBI, *Criminal Justice Information Services (CJIS)*, Services,
https://www.fbi.gov/services/cjis#Overview ............................................................... 19

FBI, *2025 CJIS Year in Review,* Law Enforcement Resources,
https://le.fbi.gov/file-repository/cjis-2025-year-in-review-010726.pdf/view ......... 19

FBI, *What is the mission of the FBI?,* About,
https://www.fbi.gov/about/faqs/what-is-the-mission-of-the-fbi ............................. 19

*FTC, 50 Years of the FCRA,*
https://www.ftc.gov/business-guidance/blog/2020/10/50-years-fcra ...................... 20

FTC, *Advisory Opinion to Copple (June 10, 1998)*,
https://www.ftc.gov/legal-library/browse/advisory-opinions/advisory-opinion-
copple-06-10-98 ................................................................................................ 20, 32

FTC, *Advisory Opinion to Goeke (June 9, 1998)*,
https://www.ftc.gov/legal-library/browse/advisory-opinions/advisory-opinion-
goeke-06-09-98 ....................................................................................................... 20

FTC, *Advisory Opinion to Pickett (July 10, 1998)*,
https://www.ftc.gov/legal-library/browse/advisory-opinions/advisory-opinion-
pickett-07-10-98 ...................................................................................................... 20

FTC, *Advisory Opinion to Lewis* (June 11, 1998),
https://www.ftc.gov/legal-library/browse/advisory-opinions/advisory-opinion-
lewis-06-11-98 ......................................................................................................... 21

FTC, *Advisory Opinion to Hauxwell (June 12, 1998)*,
https://www.ftc.gov/legal-library/browse/advisory-opinions/advisory-opinion-
hauxwell-06-12-98 ................................................................................................... 21

*FBI*, Identity History Summary Checks, How We Can Help You,
https://www.edo.cjis.gov/#/ .................................................................................... 24

<u>**STATEMENT OF JURISDICTION**</u>

The District Court exercised subject-matter jurisdiction over Plaintiff-Appellant John Doe's claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, pursuant to 28 U.S.C. § 1331. This Court exercises appellate jurisdiction over the District Court's dismissal under 28 U.S.C. § 1291.

<u>**STATEMENT OF THE ISSUES**</u>

1. Whether the District Court correctly dismissed Plaintiff's claims under the FCRA for failure to state a plausible claim because the FBI is not a "consumer reporting agency" as defined by the FCRA.

<u>**STATEMENT OF THE CASE**</u>

**I.    Factual Background.**

Plaintiff John Doe brought this case against the Director of the Federal Bureau of Investigation ("FBI"), alleging that the FBI violated the Fair Credit Reporting Act ("FCRA") by providing inaccurate criminal history information to the Transportation Security Agency ("TSA"), which was evaluating Plaintiff for the purposes of a federal licensing requirement.  Plaintiff's license application was ultimately approved, but was purportedly delayed by several weeks.

As alleged, Plaintiff John Doe was indicted for, and convicted of, first-degree rape in Multnomah County, Oregon in 2015.  JA17.  On January 31, 2023, Plaintiff's conviction was vacated, and on February 1, 2024, the indictment was

dismissed.  JA18.  According to Plaintiff, "all records were set aside and sealed by the Oregon Court on August 19, 2024" and therefore "[a] current review of Oregon public records would confirm there is no record of any conviction, arrest, or indictment."  JA18 (emphasis omitted).

In early 2024, Plaintiff obtained a job involving transporting hazardous materials.  JA17.  As such, Plaintiff was required to obtain a Hazardous Materials Endorsement ("HME")—a government license that requires a fingerprint-based criminal history records check—from the TSA, which conducts the HME Threat Assessment Program.  JA9, JA16.  In April 2024, Plaintiff applied for an HME and submitted his fingerprints to the TSA.  JA17.

According to Plaintiff, the FBI's Criminal Justice Information Services ("CJIS") Division maintains a database containing "biometric, identity history, biographic, property, and case/incident history data," JA12, as well as "criminal records from state and federal law enforcement agencies," JA14.  Plaintiff alleges that the FBI has an agreement with the TSA to use this database and provide background checks, including criminal history reports, on HME applicants for the TSA.  JA12-13, JA17.  Accordingly, on April 8, 2024, TSA ordered an Identity History Summary Check—what Plaintiff refers to as a "rap sheet"—on Plaintiff from the FBI.  JA17; *see also* JA9.  Plaintiff alleges that the data included on the rap sheets is "not obtained directly from court records on an individual basis but

instead is obtained in bulk or scraped from court websites."  JA15.

On April 8, 2024, the FBI provided the Identity History Summary Check on Plaintiff to the TSA.  JA17.  According to Plaintiff, the document the FBI provided to the TSA included "inaccurate criminal history information about Plaintiff."  JA17.  Specifically, Plaintiff alleges that the Identity History Summary Check should not have contained information regarding Plaintiff's 2015 first-degree rape conviction.  JA17-18.  Plaintiff alleges that, if the FBI had "followed the most basic procedure of consulting the public record," it would have discovered that his conviction was vacated in 2023, and his indictment dismissed in 2024.  JA18.

On April 29, 2024, the TSA notified Plaintiff via letter that it had made a preliminary determination that Plaintiff may not be eligible for an HME due to his rape conviction.  JA18-19.  The TSA did not identify the FBI as the source of its information.  JA19.  On May 11, 2024, Plaintiff appealed the TSA's preliminary determination and requested a copy of the materials the TSA had relied upon in making it.  JA19-20.  Plaintiff also provided the TSA with "information and documentation . . . to support his assertion that the information provided to TSA had been inaccurate."  JA20.  The TSA confirmed it received Plaintiff's appeal on May 16, 2024 and on June 11, 2024, the TSA sent Plaintiff a document labeled "Criminal Justice Department Rap-Sheet."  JA20.  This document contained information regarding Plaintiff's first-degree rape conviction.  JA20.  Plaintiff later

learned this document was provided by the FBI to the TSA.  JA20.

On June 12, 2024, the TSA notified Plaintiff that his HME application was approved.  JA20.  Plaintiff asserts that the allegedly inaccurate information the FBI provided to the TSA caused him various harms, including a purported six-week delay in his "employment and licensing opportunities," loss of wages and benefits, and emotional distress.  JA22-23.  Plaintiff also claims he suffered "damage to his reputation," but he does not explain how the FBI's transmission of his criminal history solely to the TSA (i.e., the act of one government agency sending the information to another) resulted in any such harm.  JA22-24.  Nor does Plaintiff allege that the information at issue was shared with his employer, the public at large, or any person or organization outside the TSA or FBI.

## II.    The Fair Credit Reporting Act ("FCRA").

Congress enacted the FRCA in 1970 to "ensure 'fair and accurate credit reporting.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (quoting 15 U.S.C. § 1681(a)(1)); *see* 15 U.S.C. § 1681(b) ("It is the purpose of [the FCRA] to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information").  To do so, the FCRA "regulates the creation and the use of

4

'consumer report[s]' by 'consumer reporting agenc[ies]' for certain specified purposes, including credit transactions, insurance, licensing, consumer-initiated business transactions, and employment." *Spokeo*, 578 U.S. at 334–35 (quoting 15 U.S.C. §§ 1681a(d)(1), (f)). A "consumer report" is any information by a "consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" that is used or expected to be used to determine the consumer's eligibility for credit, insurance, employment, and for various other purposes specified by the statute. 15 U.S.C. § 1681a(d)(1).

A "consumer reporting agency" is defined as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers ***for the purpose of furnishing consumer reports*** to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f) (emphasis added). A person includes "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." *Id.* § 1681a(b).

The FCRA requires that subject entities use "reasonable procedures to assure maximum possible accuracy of" consumer reports, *id.* § 1681e(b) and limit the type and age of certain information included on such reports, *see id.* § 1681c. Any person who "willfully fails" to comply with the FCRA's requirements is subject to civil liability and actual damages. *See* 15 U.S.C. § 1681n(a). However, "a bare procedural violation" of the FCRA is not sufficient to confer standing—rather the consumer must allege some concrete harm as a result of the violation. *Spokeo, Inc.*, 578 U.S. at 342.

## III.    Procedural History.

Plaintiff filed the instant suit on December 27, 2024. Plaintiff's complaint asserted two claims against the Director of the FBI in his official capacity–both of which alleged violations of the FCRA. *See* JA5-26. In his first claim, Plaintiff alleges that the FBI violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to ensure the "maximum possible accuracy" of the information it provided regarding Plaintiff's criminal history. JA23-26. Plaintiff alleges that the FBI "had access to public as well as non-public information that would have informed it that its report about the Plaintiff was false," JA23, and that the FBI had "actual notice" that its procedures were deficient, JA24. In his second claim, Plaintiff alleges that the FBI violated 15 U.S.C. § 1681c(a) by willfully providing obsolete information (i.e., information over seven years old) to the TSA

about Plaintiff's criminal history—namely the arrest information from Plaintiff's 2015 rape case.  JA25-26.

**a.** The FBI moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a plausible claim, because the FBI—like other law enforcement agencies that compile criminal history information—is not a "consumer reporting agency" under the terms of the statute and therefore not covered by the FCRA. R. 17.

Defendant cited decisions from multiple courts that have examined the issue of whether the FBI acts as a consumer reporting agency by providing criminal history record information, all of which have determined that "[i]t is will settled that the FBI is not a consumer reporting agency." *Id.* at 6.  Defendant further noted that the Federal Trade Commission, which had the sole responsibility for enforcing the FCRA until the creation of the Consumer Financial Protection Bureau in 2010, has issued at least one advisory opinion confirming that the FBI, although it "makes such reports to employers," is not a consumer reporting agency. *Id.* at 9.

In response, Plaintiff opposed Defendant's motion, but cited no contrary authority examining the issue of whether the FBI acts as a consumer reporting agency.  R. 28.  Instead, Plaintiff argued that Defendant's cited authority is irrelevant and inapplicable because it pre-dates the Supreme Court's decision in *Department of Agriculture Rural Development Rural Housing Service v. Kirtz*, 601

U.S. 42 (2024). *Kirtz* held that the FCRA contained a waiver of sovereign immunity and therefore federal agencies such as the FBI *can* be consumer reporting agencies and found liable under the statute *if* they meet the definition of a consumer reporting agency. R. 28 at 7, 12, 15. But, as Defendant noted in his reply brief, *Kirtz* did not disturb the rationale of cases analyzing *why* the FBI does not act as a consumer reporting agency and therefore does not meet the statutory definition. R. 29 at 6.

Plaintiff also asserted that "Defendant's case law supports the limited and unremarkable proposition that law enforcement agencies do not operate as CRAs most of the time and that their core law-enforcement functions are not regulated by the FCRA." R. 28 at 15. Plaintiff argued that his allegations "do not implicate the entirety of the FBI's operations or its core law-enforcement functions," but rather "describe a specific way in which the FBI sometimes operates as a CRA," and therefore his claim should survive at the motion to dismiss stage. R. 28 at 15-16.

**b.** The District Court granted the FBI's motion to dismiss for failure to state a plausible claim, holding that, as a matter of law, "the FBI is not a credit reporting agency" under the FCRA's statutory definition of the term. JA30. The District Court relied on multiple decisions from both district and circuit courts to reach this conclusion. JA30-31 (citing, *inter alia*, *Ricci v. Key Bancshares of Maine, Inc.*, 768 F.2d 456, 466 (1st Cir. 1985) ("The FBI is not a 'consumer reporting agency'

as defined under the [FCRA].”); *Ollestad v. Kelley*, 573 F.2d 1109, 1111 (9th Cir. 1978) (“It cannot be contended seriously that agencies such as the F.B.I. compile information on persons . . . for the purpose of furnishing consumer reports to third parties.”); *Mowrer v. U.S. Dep't of Transp.*, No. CV 12-1158 (BAH), 2019 WL 4418747, at *5 (D.D.C. Sept. 16, 2019), *aff'd sub nom Mowrer v. U.S. Dep't of Transp.*, 14 F.4 723 (D.C. Cir. 2021) (“Courts have consistently concluded that government entities are not ‘consumer reporting agenc[ies]’ because they do not collect information for the purpose of furnishing it to third parties.”) (citing cases); *Arnold v. Capital One Servs., Inc.*, 2011 WL 864332, at *4 (E.D. Va. Mar. 10, 2011) (“It is well-settled that the FBI is not a consumer reporting agency.”); *Thomas v. FTS USA, LLC*, 2016 WL 3653883, at *5 (E.D. Va. June 30, 2016); *Smith v. Busch Entertainment Corp.*, 2009 WL 1608858, at *3 (E.D. Va. June 3, 2009)).

In particular, consistent with this authority, the District Court explained that “[t]he fact that the FBI ‘provides employers criminal conviction data on employees or prospective employees in limited circumstances does not transform it into a consumer reporting agency for purposes of the FCRA.’” JA31 (quoting *Smith*, 2009 WL 1608858, at *2). “The FBI does not ‘assembl[e] or evaluat[e]’ criminal history records ‘for the purpose of furnishing consumer reports to third parties.’” JA31 (quoting 15 U.S.C. 1681a(f)). To the contrary, “the FBI is required by law to

maintain this data for the administration of criminal justice." JA31 (citing 28

C.F.R. § 20.31(a, b); 28 C.F.R. 20.3(b)).  Thus, the District Court held, the "TSA's

purpose in using the information for employment purposes does not transform the

FBI's purpose in collecting the information" into one that renders it a "consumer

reporting agency" under the FCRA.  JA31.

The District Court also cited to advisory opinions from the Federal Trade

Commission, "one of the entities charged with enforcing FCRA," which "confirm

that agencies, both state and federal, that maintain repositories of criminal records

to further law enforcement policies are not credit reporting agencies."  JA31-32.

The District Court noted that Plaintiff "fail[ed] to provide any binding or

persuasive authority to the contrary," and that other district courts have looked to

FTC advisory opinions as "persuasive authority when interpreting" the FCRA.

JA31-32.

Finally, the District Court rejected Plaintiff's attempt to rely on the Supreme

Court's decision in *Department of Ag. v. Kirtz*, 601 U.S. 42 (2024), recognizing

that the only "question before the Court in *Kirtz* was whether the federal

government is 'susceptible to suit when it supplies false information [in violation

of FCRA], or whether it may invoke sovereign immunity to avoid liability.'"  JA32

(quoting *Kirtz*, 601 U.S. at 45).  As the District Court noted, the question of

sovereign immunity is "a threshold matter; if the federal government was immune

from all FCRA suits, there would be no need to determine whether any given agency was in fact a '[consumer] reporting agency' subject to liability under the FCRA." JA32. In *Kirtz*, the Supreme Court "found that the FCRA 'effects a clear waiver of sovereign immunity,' thus permitting consumer claims for damages against the government." JA32 (quoting *Kirtz*, 601 U.S. at 50-51). However, the District Court noted that *Kirtz* does not "analyze whether any particular federal agency, such as the FBI, is a 'consumer reporting agency' as defined by the statute." JA32. Thus, the District Court stated, "[a]ny pre-*Kirtz* case law analyzing the definition of 'consumer reporting agency' and its applicability to the FBI is . . . relevant and persuasive." JA32.

Plaintiff subsequently noticed his appeal of the District Court's order on August 29, 2025. JA4 (citing R. 31).

<u>SUMMARY OF THE ARGUMENT</u>

As Plaintiff himself cannot dispute, the FCRA's strictures apply only to "consumer reporting agencies" as defined by the statute. Consistent with the repeated holdings of courts around the country on this issue, the District Court correctly concluded that, as a matter of law, the FBI is not a "consumer reporting agency" under the FCRA. Accordingly, the District Court properly dismissed Plaintiff's FCRA claims for failure to state a plausible claim.

Plaintiff seeks to challenge this result by raising three putative errors on the part of the District Court. First, Plaintiff argues that the District Court ignored Plaintiff's allegations that would, if proven, show that the FBI published the information in question "with the specific intent that they be used in decision-making about employment and licensing." Br. at 22.  Second, Plaintiff argues that the District Court erred by ignoring the FBI's "specific intent" when it assembles and evaluates consumer information into reports that will be used for employment and licensing purposes, and instead focusing on the FBI's intent behind the creation of the database of information from which the reports are drawn. And finally, Plaintiff argues the case law relied upon by the District Court is inapposite. Plaintiff is wrong on all three points.

As to the first purported error, none of Plaintiff's factual allegations make any difference to the analysis here.  Plaintiff's factual allegations merely advance the unremarkable proposition that the FBI provides criminal justice information to other agencies – as it did here.  Those factual allegations do not change the unassailable statutory, regulatory, and policy-based reality that the FBI "assembles" and "evaluates" criminal history information as a part of its charge to protect public safety, and not for the purpose of furnishing consumer reports to third parties.

Second, Plaintiff points to three cases—all out of Circuit, none involving the FBI—for the proposition that the proper inquiry is the FBI's "specific intent" in preparing the reports at issue. None of these cases holds that the FBI is a consumer reporting agency or that any government agency is a consumer reporting agency.

Finally, Plaintiff cannot identify a single case—and Defendant is not aware of any—holding that when the FBI provides such information, it is transformed into a CRA. Indeed, there is abundant authority to the contrary. Plaintiff's efforts to distinguish this authority simply are not persuasive.

Accordingly, this Court should affirm the District Court's dismissal of Plaintiff's claims for failure to state a plausible claim.

## STANDARD OF REVIEW

This Court "review[s] de novo the district court's dismissal of a complaint under Rule 12(b)(6) for failure to state a claim." *Andon, LLC v. City of Newport News, Va.*, 813 F.3d 510, 513 (4th Cir. 2016).

## ARGUMENT

**I. THE DISTRICT COURT DID NOT ERR IN HOLDING THE FBI IS NOT A CONSUMER REPORTING AGENCY UNDER THE FCRA.**

The District Court correctly dismissed Plaintiff's Complaint for failure to state a claim under the FCRA.

Congress enacted the FRCA in 1970 to "ensure 'fair and accurate credit reporting.'" *Spokeo*, 578 U.S. at 334 (quoting 15 U.S.C. § 1681(a)(1)). To do so,

the FCRA "regulates the creation and the use of 'consumer report[s]' by 'consumer reporting agenc[ies]' for certain specified purposes, including credit transactions, insurance, licensing, consumer-initiated business transactions, and employment." *Id.* at 334–35 (quoting 15 U.S.C. §§ 1681a(d)(1), (f)).

A "consumer reporting agency" is defined as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers *for the purpose of furnishing consumer reports* to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f) (emphasis added). A "consumer report" is any information by a "consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" that is used or expected to be used to determine the consumer's eligibility for credit, insurance, employment, and for various other purposes specified by the statute. 15 U.S.C. § 1681a(d)(1). Putting the two definitions together, a "consumer reporting agency" must "assembl[e] or evaluat[e]" information about a consumer's "character" or "general reputation" "for the purpose of furnishing consumer reports to third parties."

The District Court correctly concluded that, as a matter of law, the FBI is not a "consumer reporting agency" under the FCRA, and thus Plaintiff's Complaint

must be dismissed. *See* JA27-33. In rejecting Plaintiff's argument that the FBI acted as a "consumer reporting agency" because it provided criminal history records to another government agency, JA31, the District Court correctly applied the plain statutory language to the circumstances under which the FBI "assembles" and "evaluates" criminal history information, as prior caselaw has emphatically held —in the particular context of the FBI and other law enforcement agencies. JA30-31.

### A. The FBI Does Not "Regularly Engage" "In the Practice of Assembling or Evaluating" Criminal History Information "For the Purpose of Furnishing Consumer Reports to Third Parties"

As the District Court properly held, "the fact that the FBI 'provides employers criminal conviction data on employees or prospective employees in limited circumstances does not transform it into a consumer reporting agency for the purposes of the FCRA.'" JA31 (quoting *Smith*, 2009 WL 1608858, at *2). That is because the FBI "does not 'assembl[e] or evaluat[e]' criminal history records 'for the purpose of furnishing consumer reports to third parties.'"JA31 (quoting 15 U.S.C. § 1681a(f)). Rather, the information at issue here is "assembled" and "evaluated" for the administration of criminal justice.

Specifically, the FBI is required by law to maintain criminal history record information. *See* 28 U.S.C. § 534; 28 C.F.R. § 20.31(b) (requiring FBI to "support identification and criminal history record information functions for local, state,

tribal, and federal criminal justice agencies, and for noncriminal justice agencies and other entities when authorized by federal statute . . ."); 28 C.F.R. § 20.3(b) (defining the "administration of criminal justice" to include, among other things, "criminal identification activities and the collection, storage, and dissemination of criminal history record information").

Moreover, the FBI's collection and dissemination of the criminal history record information it maintains is regulated by numerous federal statutes and regulations specific to the FBI and its databases. *See, e.g.*, 28 C.F.R. § 20.33(a)(3) ("'criminal history record information'" maintained by the FBI in the Interstate Identification Index ("III") and the Fingerprint Identification Records System ("FIRS")[1] "may be made available . . . for use in connection with licensing or employment" *only* pursuant to "federal legislation."); 34 U.S.C. § 41104 (authorizing the FBI Director to collect fees to process fingerprint identification records "for non-criminal justice, non-law enforcement employment and licensing purposes"); 28 U.S.C. § 534(a)(1) ("The Attorney General shall . . . acquire, collect, classify, and preserve identification, criminal identification, crime, and

---

[1] The FIRS was replaced and enhanced by the Integrated Automated Fingerprint Identification System ("IAFIS") and then by the Next Generation Identification ("NGI") system. *See generally* FIRS System of Records Notice, 64 Fed. Reg. 52343 (Sept. 28, 1999); NGI System of Record Notice, 81 Fed. Reg. 27284 (May 5, 2016); FBI, *Next Generation Identification (NGI)* (available at https://le.fbi.gov/science-and-lab/biometrics-and-fingerprints/biometrics/next-generationidentification-ngi).

other records"); 28 C.F.R. § 0.85(j) (granting FBI Director the power to exercise authority vested in Attorney General to "conduct the exchanges of identification records"); 28 C.F.R. §§ 20.30–38 (regulations governing III and NGI); 28 C.F.R. § 20.3(b) (defining the "administration of criminal justice" to include, among other things, "criminal identification activities and the collection, storage, and dissemination of criminal history record information"); 28 C.F.R. § 50.12(b) (authorizing FBI Director to approve procedures relating to the exchange of identification records); 28 C.F.R. §§ 16.30–34 (setting forth "procedures to be followed when the subject of an identification record requests production of that record to review it or to obtain a change, correction, or updating of that record").[2] Among these regulations is the requirement that "each criminal justice agency contributing data" to III and NGI must "assure that information on individuals is kept complete, accurate, and current." 28 C.F.R. § 20.37. The regulations also dictate what type of information is to be included—"serious and/or significant adult and juvenile offenses" versus excluded—"non serious offenses, e.g., "drunkenness, vagrancy, disturbing the peace, curfew violation, loitering, false fire alarm, non-specific charges of suspicion or investigation, and traffic violation." 28

---

[2] *See also* 34 U.S.C § § 40311–16 (governing exchange of criminal history records for noncriminal justice purposes); *id.* §§ 41101–07 (governing access to criminal history and identification records).

C.F.R. § 20.32.

The information at issue—i.e., Plaintiff's criminal history, including his vacated conviction—was supplied by the FBI's CJIS Division, which obtains criminal history and fingerprint information from a variety of state and federal law enforcement sources.  JA12-13, JA16; *see* 28 C.F.R. § 20.3(d) (defining "criminal history record information"); FBI, Identity History Summary Checks (Rap Sheets), available at https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/identity-history-summary-checks (last visited Apr. 8, 2026) ("All arrest information included in an Identity History Summary is obtained from fingerprint submissions, disposition reports, and other information submitted by authorized criminal justice agencies."); *see also* FBI, Identity History Summary Checks (Law Enforcement Requests), available at https://le.fbi.gov/informational-tools/identity-history-summary-checks (last visited Apr. 8, 2026) (describing the sources of information housed in the FBI's NGI System).[3]

The CJIS Division was established in 1992 "to serve as the focal point and central repository for criminal justice information services in the FBI."  FBI, Criminal Justice Information Services (CJIS), available at

---

[3] Of course, both the District Court and this Court are entitled to take judicial notice of the information contained on government websites and thus may review the same in adjudicating (or exercising judicial review over the grant of) a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004).

https://www.fbi.gov/services/cjis#Overview (last visited Apr. 8, 2026).  The

Division is "a high-tech hub" that "provides a range of state of-the-art tools and

services to law enforcement, national security and intelligence community

partners, and the general public."  *Id*.  The mission of the CJIS Division is "to

equip [its] partners with the criminal justice information needed to protect the

United States while preserving civil liberties."  *See* FBI CJIS Division 2025 Year

in Review at 2 (Jan. 7, 2026), available at https://le.fbi.gov/file-repository/cjis-

2025-year-in-review-010726.pdf/view.  This fits into the FBI's larger mission of

"protect[ing] the American people and uphold[ing] the U.S. Constitution."  FBI,

Federal Bureau of Investigation, available at https://www.fbi.gov/about/faqs/what-

is-the-mission-of-the-fbi (last visited Apr. 8, 2026).  Simply put, the FBI's CJIS

Division does not "assembl[e] or evaluate[e] consumer credit information or other

information on consumers *for the purpose of furnishing consumer reports to third*

*parties*."  15 U.S.C. § 1681a(f) (emphasis added).  Rather, the Division's collects

and provides information to authorized entities, like the TSA, to assist in crime

reduction and prevention.

In addition, the Federal Trade Commission ("FTC"), which had sole

responsibility for enforcing the FCRA until the creation of the Consumer Financial

Protection Bureau in 2010,[4] has issued at least one advisory opinion confirming

that the FBI, although it "makes such reports to employers" (i.e., provides criminal

history reports) is not a consumer reporting agency.[5] *See* FTC, Advisory Opinion

to Copple (June 10, 1998), *available at* https://www.ftc.gov/legal-

library/browse/advisory-opinions/advisory-opinion-copple-06-10-98. The FTC has

also issued multiple advisory opinions explaining why state and federal law

enforcement agencies which compile criminal history information are not credit

reporting agencies, regardless of whether they make such information available to

employers. *See* FTC, Advisory Opinion to Goeke (June 9, 1998), available at

https://www.ftc.gov/legal-library/browse/advisory-opinions/advisory-opinion-

goeke-06-09-98 (advising that a state agency which provides criminal history

record checks is not a consumer reporting agency); Advisory Opinion to Pickett

(July 10, 1998), *available at* https://www.ftc.gov/legal-library/browse/advisory-

opinions/advisory-opinion-pickett-07-10-98 (finding that Arizona's Department of

Public Safety was not a consumer reporting agency and the criminal record reports

it provided to employers "are not consumer reports governed by the FCRA,

---

[4] *See FTC*, 50 Years of the FCRA (Oct. 27, 2020), available at
https://www.ftc.gov/business-guidance/blog/2020/10/50-years-fcra.
[5] As the District Court noted, "FTC advisory opinions can be persuasive authority
when interpreting FCRA." JA32.

regardless of whether or not they include FBI input").[6]

Plaintiff attempts to circumvent the District Court's analysis of the plain language of the relevant FCRA provisions by arguing that his Complaint stated sufficient factual allegations that the FBI meets the statutory definition of "consumer reporting agency." In particular, Plaintiff maintains that he pled facts "showing that the FBI and CJIS specifically intended to prepare consumer reports." Br. at 26. But those factual allegations merely advance the unremarkable proposition that the FBI provides criminal justice information to other agencies – as it did here. Those factual allegations do not have the talismanic effect that Plaintiff posits; namely, they do not change the unassailable statutory, regulatory, and policy-based reality that the FBI "assembles" and "evaluates" criminal history information as a part of its charge to protect public safety.

In support of this argument, Plaintiff cites *Foley v. IRBsearch, LLC*, 2025 WL 950679, at *9 (S.D.N.Y. Mar. 28, 2025). *Foley* did not address the question

---

[6] *See also* FTC, *Advisory Opinion to Lewis* (June 11, 1998), https://www.ftc.gov/legal-library/browse/advisory-opinions/advisory-opinion-lewis-06-11-98 (finding that publicly-available information that courts and law enforcement entities provide to the public and/or employers are not consumer reports under the FRCA); FTC, *Advisory Opinion to Hauxwell* (June 12, 1998), available at https://www.ftc.gov/legal-library/browse/advisory-opinions/advisory-opinion-hauxwell-06-12-98 ("[I]nformation that is obtained by an employer directly from a federal, state or county record repository is not a 'consumer report' because the repository (such as a courthouse or a state law enforcement agency) is not normally a 'consumer reporting agency' and is itself not covered by the FCRA.").

here—whether the FBI, or any law enforcement agency, acts as a consumer reporting agency when it provides criminal history information to another government agency.  To the contrary, the Defendant in *Foley* was a limited liability company that allegedly "use[d] automated processes to webscrape criminal histories from court websites, or purchase[s] such records in bulk," assembled that information into a report in a "proprietary, summary format," and sold the reports for employment purposes, and to determine a consumer's eligibility for credit and insurance.  *Id.* at *8.  Based on those allegations, the district court in *Foley* held only that the Plaintiff had adequately alleged claims under the FCRA.

By contrast, the information at issue *here*—i.e., Plaintiff's criminal history, including his vacated conviction—was supplied by the FBI's CJIS Division, which obtains criminal history and fingerprint information from a variety of state and federal law enforcement sources.  JA12-13, JA16; *see* 28 C.F.R. § 20.3(d) (defining "criminal history record information"); FBI, Identity History Summary Checks (Rap Sheets), available at https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/identity-history-summary-checks (last visited Apr. 8, 2026) ("All arrest information included in an Identity History Summary is obtained from fingerprint submissions, disposition reports, and other information submitted by authorized criminal justice agencies."); *see also* FBI, Identity History Summary Checks (Law Enforcement Requests), available at

22

https://le.fbi.gov/informational-tools/identity-history-summary-checks (last visited

Apr. 8, 2026) (describing the sources of information housed in the FBI's NGI

System).

Moreover, as discussed above, the FBI's collection and dissemination of the

criminal history record information it maintains is regulated by numerous federal

statutes and regulations specific to the FBI and its databases.  *See, e.g.*, 28 U.S.C. §

534(a)(1) ("The Attorney General shall . . . acquire, collect, classify, and preserve

identification, criminal identification, crime, and other records"); 28 C.F.R. §

0.85(j) (granting FBI Director the power to exercise authority vested in Attorney

General to "conduct the exchanges of identification records"); 28 C.F.R. §§ 20.30–

38 (regulations governing III and NGI); 28 C.F.R. § 20.3(b) (defining the

"administration of criminal justice" to include, among other things, "criminal

identification activities and the collection, storage, and dissemination of criminal

history record information");  28 C.F.R. § 50.12(b) (authorizing FBI Director to

approve procedures relating to the exchange of identification records); 28 C.F.R.

§§ 16.30–34 (setting forth "procedures to be followed when the subject of an

identification record requests production of that record  to review it or to obtain a

change, correction, or updating of that record").[7]

---

[7] *See also* 34 U.S.C § § 40311–16 (governing exchange of criminal history records
for noncriminal justice purposes); *id.* §§ 41101–07 (governing access to criminal
history and identification records).

Among these regulations is the requirement that "each criminal justice agency contributing data" to III and NGI must "assure that information on individuals is kept complete, accurate, and current." 28 C.F.R. § 20.37. The governing regulation thus places the burden of ensuring the accuracy of criminal information not on the FBI, but upon the state or federal agency providing the FBI with criminal history data.[8] The regulations also dictate what type of information is to be included—"serious and/or significant adult and juvenile offenses" versus excluded—"non serious offenses, e.g., drunkenness, vagrancy, disturbing the peace, curfew violation, loitering, false fire alarm, non-specific charges of suspicion or investigation, and traffic violations." 28 C.F.R. § 20.32(a), (b). These regulations are at odds with various provisions of the FCRA, including its requirements that providers of consumer information have the burden to ensure accuracy, *see* 15 U.S.C. § 1681e(b), and that arrest records over seven years old cannot be included, *see* 15 U.S.C. § 1681c. This independent body of regulation, and the documented purpose for which CJIS was created, *see supra* at 15-19, contradict the notion that the FBI acts as consumer reporting agency—or that

---

[8] The regulation does allow individuals to "direct [a] challenge as to the accuracy or completeness of any entry on his/her record to the FBI"—which then "forward[s] the challenge to the agency which submitted the data requesting that agency to verify or correct the challenged entry." 28 C.F.R. § 16.34; *see FBI*, Identity History Summary Checks, *available at* https://www.edo.cjis.gov/#/ (last visited Apr. 9, 2026) (explaining how to challenge an Identify History Summary).

Congress intended it to be treated as such—when utilizing its fingerprint identification and criminal history record systems to access and disseminate criminal history record information to authorized recipients.

Simply put, based on the allegations in the Complaint and the legal and regulatory framework governing the FBI's maintenance of criminal history record information, FBI's CJIS Division does not "assembl[e] or evaluate[e] consumer credit information or other information on consumers *for the purpose of furnishing consumer reports to third parties*." 15 U.S.C. § 1681a(f) (emphasis added). Rather, the Division's main purpose is collecting and disseminating information to assist in crime reduction and prevention. Accordingly, Plaintiff has failed to allege the FBI was a "consumer reporting agency" under the FCRA.[9]

### B. Courts Have Repeatedly Rejected the Position that the FBI – or Other Law Enforcement Agencies – Are "Consumer Reporting Agencies" Under the FCRA

Nor did the District Court – or does this Court – approach this question of statutory construction anew. Quite the contrary, the District Court's holding is on all fours with the existing authority interpreting the question of whether the FBI is

---

[9] Likewise, because the FBI is not a consumer reporting agency, the criminal history report allegedly provided by the FBI to the TSA does not qualify as a "consumer report" under the FCRA. *See* 15 U.S.C. § 1681a(d)(1) (defining consumer report as communication by a consumer reporting agency). The district court's dismissal of Plaintiff's suit can be affirmed on this independent ground as well.

a "consumer reporting agency" under the FCRA.  Courts that have examined the issue of whether the FBI acts as a FCRA "consumer reporting agency" by providing criminal history record information have all determined that it does not.  This Court should not chart a new path.

Courts have repeatedly held that the FBI, and other law enforcement agencies, are not "consumer reporting agencies" under the FCRA when they supply criminal history information.  The Ninth Circuit's discussion in *Ollestad v. Kelley*, 573 F.2d 1109 (9th Cir. 1978), is emblematic of this authority:

> It cannot be contended seriously that agencies such as the FBI compile information on persons . . . for the purpose of furnishing consumer reports to third parties.

*Id.* at 1110-11.  And the First Circuit has held similarly.  *See Ricci v. Key Bancshares of Maine, Inc.*, 768 F.2d 456, 466 (1st Cir. 1985) ("The FBI is not a 'consumer reporting agency' as defined under the [FCRA].").  Fourth Circuit district courts have similarly concluded that the issue is "well-settled."  *Arnold*, 2011 WL 864332, at \*4 ("It is well-settled that the FBI is not a consumer reporting agency.") ("Courts have consistently concluded that government entities are not 'consumer reporting agenc[ies]' because they do not collect information for the purpose of furnishing it to third parties.") (citing cases). The same is true of other law enforcement agencies.  *See Thomas v. FTS USA, LLC*, 2016 WL 3653883, at \*5 (E.D. Va. June 30, 2016) ("[G]overnmental agencies are not consumer reporting

agencies because governmental agencies do not compile information on persons "for the purpose of furnishing consumer reports to third parties."); *Smith v. Busch Entertainment Corp.*, 2009 WL 1608858, at *2 (E.D. Va. June 3, 2009) (holding the Virginia State Police Central Criminal Records Exchange is not a consumer reporting agency merely because it provides employers with background information about employees or prospective employees).  As these courts have noted, the FCRA's legislative history indicates that "the statute is concerned with regulating practices in the credit reporting industry rather than with regulating the record-keeping functions of federal agencies."  *Ollestad*, 573 F.2d at 1111 (citing 116 Cong. Rec. 35941 (1970) (remarks of Sen. Proxmire); 116 Cong. Rec. 36576 (1970) (remarks of Rep. Brown)); *see also Arnold*, 2011 WL 864332, at *2.

The District of Columbia Circuit has also so held, in considering a FCRA claim brought against the Department of Transportation with respect to information provided to prospective employers about the safety records of commercial truck drivers.  *Mowrer v. U.S. Dep't of Transp.*, 14 F.4th 723 (D.C. Cir. 2021).  There, the district court dismissed the FCRA claim, holding that "[c]ourts have consistently concluded" that traditional government agencies like the FBI "are not 'consumer reporting agenc[ies]' because they do not collect information for the purpose of furnishing it to third parties.'"  *See Mowrer v. U.S. Dep't of Transp.*, 2019 WL 4418747, at *5 (D.D.C. Sept. 16, 2019) (collecting

cases).  The District of Columbia Circuit affirmed.  Noting that although a federal statute "required" the agency "to make such records available to prospective employers, the [agency] neither assembles nor evaluates the records for that purpose." *Mowrer*, 14 F.4th at 731.  Instead, as with the FBI and criminal history information, the agency – per its statutory and regulatory charter – used the safety information "to inform its administration of the Motor Carrier Safety Assistance Program," and "its own enforcement activity." *Id.*  As such, the agency "cannot fairly be described as regularly engaged in 'assembling' or 'evaluating' these accident and inspection reports 'for the purpose of furnishing' them to the drivers' prospective employers." *Id.*  And finally, just as with the FBI, the *Mowrer* court held that the "canon of surplusage" precluded a different interpretation insofar as federal statute required drivers to correct inaccurate information in the agency's database – a "requirement[]" that "would have little or no effect if the [agency] were already a 'consumer reporting agency' covered by [the] FCRA." *Id.* at 732.

Plaintiff's primary argument is that the District Court erred because it failed to apply the proper test to determine whether the FBI was acting as a "consumer reporting agency" under the FCRA.  Br. at 10-11.  According to Plaintiff, "case law establishes that the statutory definition of 'consumer reporting agency' must be applied with reference to the specific intent behind the preparation of the individual consumer reports, not with reference to the specific intent behind the

28

database of information from which those reports are drawn." Br. at 10; Br. at 34-35. But Plaintiff cites no authority, binding or persuasive, applying such a test to hold that the FBI, or any law enforcement agency, is a consumer reporting agency. Rather, Plaintiff cites to three non-binding cases, none of which involves the FBI, and all of which are readily distinguishable. *See* Br. at 34-35.

*First*, Plaintiff argues that the Second and Ninth Circuits have "held that an entity is a [consumer reporting agency] whenever it specifically intends to publish reports that will be used for one or more of the purposes set forth in § 1681a(d)(1)." Br. at 31 (citing *Kidd v. Thomson Reuters Corp.*, 925 F.3d 99 (2nd Cir. 2019); *Zabriskie v. Fed. Nat'l Mortg. Ass'n,* 940 F.3d 1022 (9th Cir. 2019)). Neither case Plaintiff cites stands for such a broad proposition of law, however.

In *Zabriskie*, the Ninth Circuit held that Fannie Mae, a government-sponsored entity created by Congress "to provide liquidity and stability in the secondary market for residential mortgages," was not a consumer reporting agency under the FCRA. 940 F.3d at 1025-1026 (internal citation omitted).[10] Fannie Mae purchases certain mortgage loans from lenders in order to fulfill its mission, and licensed a proprietary underwriting software to lenders, which allowed lenders to

---

[10] At the outset, it bears mentioning that the Ninth Circuit conclusively held in *Ollestad* that the FBI is not a "consumer reporting agency" under the FCRA. *See supra* at 8-9. Plaintiff's construction of *Zabriskie*, therefore, would violate the Ninth Circuit's well-settled rule that subsequent panels "are bound by the decisions of prior panels." *Montana v. Johnson*, 738 F.2d 1074, 1077 (9th Cir. 1984).

determine if Fannie Mae would purchase a loan from them. *Id.* at 1025-26. After various lenders used the software and denied plaintiff-homeowners' loan applications, the homeowners sued Fannie Mae under the FCRA, alleging Fannie Mae communicated false information about them through the software. *Id.* at 1026.

The Ninth Circuit held that Fannie Mae was not a consumer reporting agency under the FCRA because "even if it assembles or evaluates consumer information," as a result of the software, "it does not do so for the purpose of furnishing consumer reports to third parties." *Id.* at 1027. Rather, the purpose of the software was to facilitate a transaction between the lender and Fannie Mae. *Id.* As it did in *Ollestad* with respect to the FBI, the Ninth Circuit noted that the plain meaning of the definition of consumer reporting agency means the "FCRA applies to an entity that assembles or evaluates consumer information with the intent to provide a consumer report to third parties." *Id.* The court rejected the plaintiffs' argument that the court should "interpret 'purpose' [in the FCRA] objectively to encompass 'the end result or effect on consumers of issuing" software findings. *Id.* at 1027.

Similarly, in *Kidd*, the Second Circuit held that the Defendant, Thomson Reuters, was not a "consumer reporting agency" under the FCRA. 925 F.3d at 101. In *Kidd*, the plaintiff was the subject of a background check as part of an

employment application; that background check was performed using Thomson

Reuters' internet platform, "CLEAR." *Id.* As a result of incorrect information in

the CLEAR report, Plaintiff's job application was rejected, and Plaintiff sued

Thomson Reuters under the FCRA for providing false information. *Id.* The court

held that in order to qualify as a "'consumer reporting agency' under the FCRA, an

entity must specifically intend to furnish a 'consumer report.'" *Id.* at 103. The

Second Circuit specifically rejected the plaintiff's argument that the FCRA

"merely requires that an entity intend to furnish a report (consumer or otherwise)

that ultimately constitutes a 'consumer report,'" reasoning that such an

interpretation was inconsistent with the plain language of the statute. *Id.* at 106 &

n.8. Applying this test, the court found that Thomson Reuters was not a consumer

reporting agency because it took numerous, effective measures to prevent CLEAR

reports from being used as consumer reports. *Id.* at 107.

As noted above, *Zabriskie* and *Kidd* do not address the question presented

here: Neither *Zabriskie* nor *Kidd* hold that the FBI – or any law enforcement

agency for that matter – is a "consumer reporting agency" under the FCRA. Nor

does either case address the circumstance of a law enforcement agency providing

information to another government agency, or to an employer.

In addition, there is good reason not to interpret either case as supporting

Plaintiff's argument: both *Zabriskie* and *Kidd* cite approvingly to FTC authority

31

which states that the FBI is *not* a consumer reporting agency when it provides criminal history information to another government agency. *See Kidd*, 925 F.3d at 106 (quoting Fed. Trade Comm'n, 40 Years of Experience with the Fair Credit Reporting Act, 2011 WL 3020575, at *23 (2011)); *Zabriskie*, 940 F.3d at 1027 (same). This 2011 FTC Guidance contains a section explaining why government agencies that transmit information to other government agencies for employment purposes are not considered consumer reporting agencies. *See* 2011 WL 3020575, at *25. In addition, the 2011 FTC Guidance relies upon and cites directly to the FTC Guidance advising that the FBI does not act as a consumer reporting agency when it responds to a criminal records inquiry from an employer. *See id.* at *25 n.63 (citing FTC, Advisory Opinion to Copple (June 10, 1998), available at https://www.ftc.gov/legal-library/browse/advisory-opinions/advisory-opinion-copple-06-10-98); *see also id.* at *6 ("In response to inquiries concerning the applicability of the FCRA to employers who procure data from a Highway Patrol, a Department of Public Investigation, and a Department of Public Safety, the staff concluded in each case that the entity was not a CRA. Similarly, the staff believes that the DMV should not be considered a CRA."). Thus, not only do *Zabriskie* and *Kidd* not bolster Plaintiff's claim that the FBI acted as a CRA here; in fact, they rely on a persuasive source that states the opposite.

Plaintiff also argues that the case law discussed above and upon which the

District Court relied, which *specifically* held that the FBI and other law enforcement agencies were not FCRA "consumer reporting agencies," is not persuasive.

As an initial matter, he claims these cases did not involve "questions about when the specific intent behind a consumer report is sufficient to make an entity meet § 1681a(f)'s definition of 'consumer reporting agency.'" Br. at 35; Br. at 10 (criticizing the District Court's reliance "entirely upon case law in which there was no allegation that the process of assembling a consumer report was distinct from the process of assembling the underlying database of information"). This is curious, as the District Court cites the District of Columbia Circuit's decision in *Mowrer*, which according to Plaintiff himself, *does* apply this "specific intent" test. Br. at 41-43 (describing *Mowrer*); JA31. Of course, as discussed above, *Mowrer* is of little help to Plaintiff. In *Mowrer*, the D.C. Circuit held that the Federal Motor Carrier Safety Administration (FMCSA) "did not act as a consumer reporting agency by distributing safety records of commercial truck drivers to prospective employers." 14 F.4th 723, 725. The court reasoned that the information FMCSA assembled and evaluated--driver safety records—in order to "support safety regulatory and enforcement activities," as required by statute. *Id.* at 731. Thus, the "specific intent" test that Plaintiff offers is of no help to his claim.

Plaintiff next claims that the district court's decision in *Smith*—a case which

33

explains why his argument is legally incorrect—"does not apply squarely to this case" because, *inter alia*, it was grounded in "specific provisions of Virginia state law" and the purpose of the state criminal history database in question "was expressly defined by state statutes and "[the state agency's] publication of criminal history information was entirely incidental to this purpose."  Br. at 38-39.  These points only underscore the FBI's argument here.  In *Smith*, the state agency was the Central Criminal Records Exchange ("CCRE"), a division of the Virginia State Police, whose purpose was statutorily defined as "to 'receive, classify, and file criminal history record information' as required by statute for use by state agencies and other entities for law enforcement purposes."  *Smith*, 2009 WL 1608858, at *1–2 (citing Va. Code Ann. § 19.2-388).  CJIS's functions are likewise defined by law and have a law enforcement purpose.  *See, e.g.*, 28 C.F.R. § 20.31(a) ("The FBI shall maintain [NGI] to  support identification and criminal history record information functions for local, state, tribal, and federal criminal justice agencies . . . ."); 28 C.F.R. § 20.3(b) (defining the "administration of criminal justice" to include, among other things, "criminal identification activities and the collection, storage, and dissemination of criminal history record information").

Moreover, in arguing that *Smith* is inapplicable, Plaintiff mischaracterizes the decision.  In *Smith*, the CCRE submitted criminal history information to a private employer—an amusement park operator—for a non-law enforcement

34

purpose, i.e., as a background check for the plaintiff, who was a prospective employee. *Smith*, 2009 WL 1608858, at *1. Notably, the *Smith* court expressly rejected the plaintiff's argument that the CCRE's submission of criminal history information for this non-law enforcement purpose "transform[ed]" the CCRE into a consumer reporting agency under the FCRA. *Id.* at *2 (citing, among other authorities, *Ollestad* and *Ricci*, *supra*). Thus, even if one credits Plaintiff's argument that the criminal history record about him was furnished to the TSA for a non-law enforcement purpose, this does not "transform" the FBI into a consumer reporting agency for FCRA purposes.

Plaintiff's attempts to distinguish other of the District Court's cited cases are similarly unavailing. For example, Plaintiff blithely refers to the Court's holdings in *Ricci* and *Thomas* as "dicta"—but in the process, concedes that it is relevant authority for this Court to apply. Br. at 37, 39. Plaintiff also claims that in *Arnold* the plaintiff did not allege that the FBI was a consumer reporting agency, Br. at 36, but a closer reading of the district court's opinion in *Arnold* shows that while the plaintiff *contended* she was not making any such allegation, the Court was not persuaded by her protestations and instead found that the essence of her argument was indeed "that the FBI is a consumer reporting agency because each of these criteria is satisfied by its supplying a criminal record to Defendants." 2011 WL 864332, at *3. It then proceeded to reject this argument.

# **CONCLUSION**

For the foregoing reasons, Defendant Patel respectfully requests that the

Court affirm the District Court's dismissal in its favor.

Dated: April 9, 2026    Respectfully submitted,

        TODD W. BLANCHE
        ACTING ATTORNEY GENERAL

      *By*:_____/s/_____
        ELIZABETH A. SPAVINS
        Assistant United States Attorney
        Office of the United States Attorney
        Justin W. Williams U.S. Attorney's Building
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Tel: (703) 299-3785
        Fax: (703) 299-3983
        Email: Lizzie.Spavins@usdoj.gov

        *Counsel for Defendant-Appellee*

**CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF
APPELLATE PROCEDURE 32(a)**

I hereby certify that this Brief of Defendant-Appellee complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this document contains 8,112 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

Furthermore, I hereby certify that this Brief of Defendant-Appellee complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/
_____
ELIZABETH A. SPAVINS
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:      (703) 299-3785
Fax:      (703) 299-3983
Email: Lizzie.Spavins@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2026, I electronically filed the foregoing using the CM/ECF system, which will send a notification of electronic filing to the following counsel of record:

Susan Mary Rotkis
Consumer Justice Law Firm
2290 East Speedway Boulevard
Tucson, AZ 85719
T: (602) 807-1504
E: srotkis@consumerjustice.com

Dawn McCraw
Consumer Justice Law Firm
8095 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
E: dmccraw@consumerjustice.com

_____/s/_____
ELIZABETH A. SPAVINS
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:      (703) 299-3785
Fax:      (703) 299-3983
Email: Lizzie.Spavins@usdoj.gov